In the Matter of SAMUEL FURSTENBURG, an Attorney.

First Department, June 6, 1930.

*Einar Chrystie*, for the petitioner.

*Samuel Furstenburg*, respondent in person.

DOWLING, P. J.   Respondent was admitted to practice as an attorney and counselor at law in the State of New York at a term of the Supreme Court of the State of New York, Appellate Division, First Department, on June 7, 1909.

This matter is now before the court on a motion for appropriate action following the filing of the report of the official referee to whom the matter was referred to take proof of the charges and to report the same with his opinion thereon to this court.

In substance, respondent is charged with misconduct as an attorney at law as follows:

One Waxenberg was arrested in New York city and held for extradition to Florida, where it was charged that he had defrauded one Waldman in a transaction which took place in 1921.   Waxenberg retained the respondent to act as his attorney in New York.   Thereafter an agreement was made by the parties in interest pursuant to the terms of which Waxenberg gave respondent $10,000 to hold in escrow and pay the same to Waldman upon the fulfillment of certain conditions.   Waldman agreed to assist Waxenberg in his effort to have the criminal proceeding against him in Florida dismissed.   Waldman carried out his part of the agreement and the criminal proceeding was dismissed.   The respondent, instead of giving the $10,000 to Waldman, as agreed, secretly gave it back

to Waxenberg, thus enabling his client to obtain the benefit of Waldman's assistance without paying the agreed price.

It appears that in February, 1921, Samuel Waldman, a resident of Providence, R. I., while on a train *en route* to Florida, met a man who introduced himself as C. J. Sumner. In Miami, Fla., Sumner introduced Waldman to one Louis Waxenberg (also known as L. W. Meyers). Thereafter Waldman participated in a transaction with Waxenberg and others, which resulted in a loss to Waldman of upwards of $50,000. It developed that the transaction in which Waldman became involved was a scheme to defraud him out of his money. Complaint to the authorities in Florida resulted in the county solicitor of Dade county, Fla., filing an information in the Criminal Court of Record of Dade county, in and for Dade county, State of Florida, December term, 1922, in which Waxenberg and others were charged with grand larceny.

In May, 1924, Waxenberg was arrested in New York, under the name of George Herbert, and arraigned in the City Magistrates' Court, charged with being a fugitive from justice. He was held in $10,000 bail pending the arrival from Florida of proper extradition papers. Respondent represented Waxenberg in the proceedings in the City Magistrates' Court.

Following Waxenberg's arrest, Waldman retained Harold H. Strauss of New York, to look after his interests. Strauss and respondent, as well as Waldman and Waxenberg, entered into negotiations looking to a settlement of Waldman's civil claims. While such negotiations were being carried on, Waxenberg went to Florida, surrendered to the proper authorities and was admitted to bail. Thereafter he returned to New York and, upon proof of the surrender and bail in Florida, the proceeding in the New York City Magistrates' Court was dismissed.

The negotiations looking to a settlement of Waldman's claims culminated in a verbal agreement whereby Waxenberg was to turn over to respondent $10,000 in cash, and procure and deliver to respondent, a few days later, a note of $5,000 indorsed by Waxenberg's wife, the money and note, when received, to be left with respondent in escrow until Waldman could return to Providence from New York, advise his Providence counsel of the arrangement and have the latter send a letter to the district attorney of Dade county, Fla., advising him of the terms of the settlement and stating that they would like to abandon the case with the consent of the Florida district attorney. Also releases were to be exchanged whereby Waldman was to reserve his rights against the other defendants (named in the information). It was agreed that, if Waldman's Providence counsel approved, and if a letter was sent,

the money and note and releases were to be turned over to Strauss (Waldman's New York attorney) by respondent.

The $10,000 in cash was delivered by Waxenberg to respondent the day the agreement was arrived at (either Decoration Day or the day before, in the year 1924). The note was never procured or delivered to respondent.

Waldman returned to Providence. His Providence counsel communicated with Strauss, and the following letter was sent by Waldman to the county solicitor of Dade county, Fla.:

" *June*, 1924.

" FRED PINE, Esq.,
 " County Solicitor,
  " Miami, Florida.

" DEAR SIR.— I am informed that Louis Waxenberg, alias Louis Meyers, has been apprehended and is now out on bail awaiting trial, having surrendered himself in court. Owing to pressure of business and illness in my family, I find it impossible to get away from Providence this Spring and spend the time necessary to appear in court to secure a conviction of this defendant, and it is quite out of the question for Mrs. Waldman, whose testimony is very important, to go south for several months.

" I have been over the entire case with my attorneys in Providence who advise me that the chances for securing the conviction of Meyers are quite doubtful.

" Under the circumstances, rather than spend any more time and money in the matter of prosecuting Meyers, I am satisfied to have the case discontinued as far as he is concerned and would request you to take such action along these lines as may be proper under the circumstances,— saving the indictment if possible against the other defendants.

" I am writing Mr. Graham today who is at present in Dallas, requesting him to notify you that he has no objection to this procedure.

" Thanking you for past favors, I am,
    " Yours very truly,
      " SAMUEL WALDMAN."

The county solicitor of Dade county, Fla., replied as follows:

" *June 9th*, 1924.

" Mr. SAMUEL WALDMAN,
 " 127 Blackstone St.,
  " Providence, R. I.

" DEAR SIR.— I am in receipt of a special delivery letter from you, dated June 5th, advising me that you do not care to further

prosecute Louis Waxenberg alias Louis Myers, who was recently apprehended in New York and who is now out on bail.

" If this is the attitude that you care to take in this matter, of course, there is nothing for me to do except to dismiss the case as I have no evidence as to his guilt outside of your testimony and as soon as the Court convenes, which will be tomorrow, I will . place the case on the Docket and Nolle Prosse it.

" Very truly yours,

" FRED W. PINE,

" *County Solicitor, Criminal Court of Record of Dade County, Florida.*"

The Florida proceeding was, in fact, dismissed.

Upon receipt of a copy of the letter sent by Waldman to Florida (which Strauss testified must have been some time after June 5, 1924) Strauss telephoned respondent and told him that the letter had been sent and he was ready to receive the money and the note from respondent. Strauss testified: " I was advised at that time by Mr. Furstenberg that Mr. Waxenberg was down south, had gone down to Florida, the case had come up and that when Mr. Waxenberg would come back the matter would be disposed of. * * * He said the case had come up and Mr. Waxenberg had gone down south and appeared there, and that when Mr. Waxenberg would come back the matter would be disposed of. He also, I think, told me that he did not have the note signed by the wife at the time." Another telephone conversation between Strauss and respondent some days later resulted in Strauss being told by respondent that Waxenberg had not as yet returned from the south. Within a day or two after the 16th of June, 1924, and after he had received a certified copy of the order dismissing the Florida proceeding, Strauss testified he went to respondent's office and was informed by respondent that he had given the money back to Waxenberg.

Respondent testified to his receiving the $10,000 on the street, near his office; that he returned to his office with Waxenberg and another; his testimony then proceeds: " I believe there was something said on the street before the money was turned over, something about horse racing, I am not sure, but there was something said which made me ask Waxenberg as to the nature of it, and why he was paying it back as a business transaction, and he always claimed he did not get any of the money. He told me then that it was. Well, now, I did not want to act, in the first place, to hold that money, but I finally did. When I heard it was a horse racing proposition I told him that I did not want to be mixed up in it. Now, I say that, not because it is horse racing, that I had any scruples against a horse race proposition, but I really used that

in a way to get out of it. He said, 'If you feel that way, you can give me the money.' I gave him the money back, and he said, 'I am going through with it just the same.' I realize that I should have immediately notified Mr. Strauss. I believe I did telephone but that there was no answer on that same Saturday afternoon. I am fairly sure that I did, but I did not notify him Monday, or I did not notify him Tuesday. I did not notify Mr. Strauss until I received a telephone message from Waxenberg's wife stating that she had just heard from her husband, and that he told her to telephone to me that the deal was all off."

The following is an extract from the cross-examination of respondent: "Q. Coming down to the Saturday when the money was given to you, you were the last person to join the party, were you not, on the street? A. I believe I was, yes, sir. Q. And after some discussion you agreed to accept the $10,000 and hold it? A. Yes, sir. Q. As a stakeholder? A. Yes, sir, all — Q. You agreed with Mr. Strauss. You had no interest in the money, personally? A. Never had, nothing one way or the other. Q. And the agreement made at that time was that upon the happening of a certain contingency the money was to be paid Waldman? A. I was to hold that money until the note was forthcoming. I was then to get in touch with Mr. Strauss. Q. You knew that the money was to go to Waldman upon the happening of such contingency, it was not to be paid back to Waxenberg? A. It was eventually to go to Waldman. Q. You knew that when you accepted the money? A. Yes, sir. Q. And you paid that money back within a half an hour after you received it, to Waxenberg? A. Yes, sir."

There is no dispute as to the main facts in this matter. Respondent's sole excuse for returning the money to Waxenberg is that he was fooled and deceived by Waxenberg.

The learned official referee, in his report, states: "I am of the opinion that the Florida transaction has no bearing on the question of the respondent's guilt or innocence of the charges made against him in this proceeding and that even if the arrangement for the payment of the $10,000 to Waldman was of doubtful propriety that fact did not justify the respondent in violating his escrow agreement by secretly giving the money back to his client.

"I find that the evidence adduced before me established beyond a doubt that although the respondent received the money and agreed to hold it in escrow and to pay it to Waldman or his attorney upon the fulfillment of certain conditions, he nevertheless gave the money back to his client within twenty minutes after he had accepted it as stakeholder without notice to Waldman or to his attorney, and that he allowed Waldman and his attorney to remain under

the impression that the terms of the escrow agreement were being carried out until after Waldman's letter to the Florida District Attorney had been acted upon and the information against Waxenberg had been dismissed.

"I also find and conclude that the respondent knew that the money was to be given to Waldman, not merely in settlement of an alleged civil liability against Waxenberg, but as a consideration for Waldman's aid in securing a dismissal of the Florida criminal proceedings against Waxenberg.

"I am of the opinion that the entire transaction was planned to obtain Waldman's assistance in the matter of the dismissal of the criminal information filed in Florida without paying the agreed price. The testimony of Strauss regarding what happened when he called the respondent and demanded the money several days after the making of the escrow agreement and after the letter had been sent to the County Solicitor of Dade County is convincing evidence of the respondent's guilty participation in this plan. Strauss is a reputable member of the Bar, he is no longer acting as Waldman's attorney and is not interested in the outcome of this proceeding. He testified that when he asked the respondent for the money the respondent told him that he would have to wait until Waxenberg returned to New York and that the respondent did not say a word about the fact that he no longer had the money or that he had paid it back to Waxenberg within twenty minutes after he received it.

"I further conclude and find that the evidence adduced before me establishes that the respondent inexcusably lent himself to a scheme whereby Waxenberg procured his release and the dismissal of the information filed against him in the criminal proceeding in Florida by leading Waldman to believe that if he assisted in the procurement of such dismissal he would receive the $10,000 which had been deposited with the respondent, and that the respondent's conduct in paying back the money to his client twenty minutes after he received it, although he had agreed with Waldman that he would hold the money for his benefit, was unwarranted and inexcusable."

Upon these findings of the learned official referee, with which we concur, the respondent should be disbarred.

FINCH, MCAVOY, MARTIN and O'MALLEY, JJ., concur.

Respondent disbarred.